UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
ANDREA GRANATA,                          :

              Plaintiff,       :         06 Civ. 4047 (SCR)

      -against-                      :

WHITE PLAINS HOSPITAL and                :
FRANCES MARY LOCHER,
                                  :

             Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x


## BRIEF IN SUPPORT OF THE
## HOSPITAL'S MOTION TO DISMISS


COLLAZO CARLING & MISH LLP
747 Third Avenue
New York, New York 10017-2803
(212) 758-7600

Attorneys for Defendants


Francis Carling
Farah Mollo,

      Of Counsel

## <u>TABLE OF CONTENTS</u>

Table of Contents..................................................................................................................i

Table of Authorities .............................................................................................................ii

Preliminary Statement ..........................................................................................................1

Statement of Facts ................................................................................................................1

Argument...............................................................................................................................2

    1.  GRANATA'S PLEADING IS INSUFFICIENTLY
       SPECIFIC TO SURVIVE A MOTION TO DISMISS .....................................................2

    2.  GRANATA'S CLAIMS AGAINST
       LOCHER MUST BE DISMISSED ...................................................................................3

    3.  GRANATA FAILS TO STATE A CLAIM OF
       DISPARATE TREATMENT UNDER THE ADA...........................................................3

Conclusion.............................................................................................................................7

# TABLE OF AUTHORITIES

Cases

*Conley v. Gibson*, 355 U.S. 41, 78 S. Ct. 99 (1957)........................................................................2

*Dean v. Westchester County P.R.C.*, 309 F.Supp.2d 587 (S.D.N.Y. 2004) ................................5, 6

*Graaf v. North Shore Univ. Hosp.*, 1 F.Supp.2d 318 (S.D.N.Y. 1998)........................................5, 6

*Harewood v. Beth Israel Medical Center*, 2003 U.S. Dist. LEXIS 10002,
    2003 WL 21373279 (S.D.N.Y. June 13, 2003)............................................................5, 6

*Hellgren v. Bell Atlantic Corp.*, 2000 U.S. Dist. LEXIS 7630,
    2000 WL 726496 (S.D.N.Y. May 30, 2000)................................................................5, 6

*Heyman v. Queens Village Committee for Mental Health*,
    198 F.3d 68 (2d Cir. 1999) ............................................................................................4

*Kendricks v. Westhab, Inc.*, 2000 U.S. Dist. LEXIS 13868 (S.D.N.Y. Feb. 22, 2000)...............5, 6

*Kendricks v. Westhab, Inc.*, 2000 U.S. Dist. LEXIS 13868 (S.D.N.Y. Sep. 22, 2000)...............5, 6

*Kendricks v. Westhab, Inc.*, 163 F. Supp. 2d 263 (S.D.N.Y. 2001) .................................................6

*King v. Town of Wallkill*, 302 F.Supp.2d 279 (S.D.N.Y. 2004)......................................................3

*Menes v. CUNY Univ. of New York*, 92 F.Supp.2d 294 (S.D.N.Y. 2000)......................................3

*Lennon v. NYC Health and Hospitals Corp.*, 392 F.Supp.2d 630 (S.D.N.Y. 2005) ......................3

*Swierkiewicz v. Sorema,* 534 U.S. 506, 122 S. Ct. 992 (2002)....................................................2, 3

Statutes

42 U.S.C. § 12102(2)....................................................................................................................4, 5

Rules

Fed. R. Civ. P. 8(a) ........................................................................................................................2

Fed. R. Civ. P. 12(b)(6) .............................................................................................................1, 7

## Preliminary Statement

Plaintiff Andrea Granata has sued her employer, White Plains Hospital Center (the "Hospital") and her former supervisor, Frances Locher, under the Americans with Disabilities Act ("ADA"), claiming that they discriminated against her because of an alleged condition involving her teeth and a bone infection and that they retaliated against her purportedly for having filed an administrative charge with the Equal Employment Opportunity Commission and/or the New York State Division of Human Rights. Granata's claims against Locher should be dismissed because it is well settled that an individual may not be held personally liable under the ADA. Additionally, the Court should dismiss Granata's underlying disability discrimination claim because it is premised on a temporary medical condition and she has not identified a major life activity that is substantially affected by the condition. The Hospital requests this relief pursuant to Fed. R. Civ. P. 12(b)(6).

## Statement of Facts

Solely for purposes of this motion to dismiss, the Hospital assumes the facts pleaded in the complaint to be true. Granata's case centers around her being transferred from her position as a nurse in the Radiology Department to a different nursing position at the Hospital, which she claims resulted from a supposed bias about a medical condition involving her teeth and a bone infection. Specifically, Granata alleges that "[f]rom June 16th, 2005 through August 23rd, 2005 I had a medical condition involving my teeth and a bone infection. On July 28th, 2005, I had emergency surgery. I was placed on disability by my doctor from July 28th to August 13th. This disability was later extended to August 23rd, 2005. I returned to work on August 24th." (State discrimination charge of September 7, 2005 attached to complaint ("SDHR Charge"), ¶ 3.) Granata does not allege that she returned to work with any restrictions. Upon her return from

leave, Granata claims that Michael Pagliaro, the Hospital's Senior Vice President of Human Resources, informed her on August 29th that she could no longer work in the Radiology Department because her supervisor, Frances Locher, "did not want me working with her anymore." (*Id.* at ¶ 5.) Pagliaro then allegedly told Granata that she would have to find another position within the Hospital or resign. (*Id.*) Significantly, Granata further alleges that from June 16th to July 28th, "[w]hile I continued to work and perform my duties at White Plains hospital [*sic*], I was able to keep my scheduled appointments which were made on my days off." (9/7/05 "Detailed Complaint Statement" to SDHR attached to complaint, ¶ 2.)

## ARGUMENT

1.   GRANATA'S PLEADING IS INSUFFICIENTLY
     SPECIFIC TO SURVIVE A MOTION TO DISMISS

An employment discrimination complaint must comply with the simplified notice pleading required by Fed. R. Civ. P. 8(a). *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 122 S. Ct. 992 (2002). The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief". Id. at 508 (quoting Fed. R. Civ. P. 8(a)(2)). The complaint will only survive a motion to dismiss if it provides fair notice of what the plaintiff's claims are and the grounds upon which those claims rest. Id. at 512. *See also Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 103 (1957). While a plaintiff need not plead every element of a prima facie case in order for her complaint to survive a motion to dismiss, she must (i) provide fair notice to the defendant of her claim and (ii) allege some facts on which relief could be granted consistent with the allegations. *Swierkiewicz*, 534 U.S. at 514.

Contrary to these requirements, Granata does not allege enough facts with respect to her alleged medical condition such that relief could be granted consistent with her allegations. She describes her supposed condition as "involving my teeth and a bone infection" (*see* SDHR

2

Charge), but fails to allege, let alone describe, any impact of that condition on any major life activity as required by the ADA. Furthermore, her condition was temporary, lasting only slightly more than two months, and temporary conditions do not trigger the protections of the ADA. Finally, Granata seeks relief against her former supervisor, Locher, which is improper under the ADA as there is no personal liability under that statute.

2.   GRANATA'S CLAIMS AGAINST
      LOCHER MUST BE DISMISSED

It is well settled that, as with claims under Title VII, individuals may not be held personally liable under the ADA in either their individual or official capacity. *King v. Town of Wallkill*, 302 F.Supp.2d 279, 295 (S.D.N.Y. 2004) (dismissing plaintiff's retaliation claim against the individual defendants brought pursuant to the ADA); *Menes v. CUNY Univ. of New York*, 92 F.Supp.2d 294, 306 (S.D.N.Y. 2000) (dismissing ADA claims against the individual defendants in both their individual and official capacities). *See also Lennon v. NYC Health and Hospitals Corp.*, 392 F.Supp.2d 630 (S.D.N.Y. 2005). Granata's claims against Locher must therefore be dismissed.

3.   GRANATA FAILS TO STATE A CLAIM OF
      DISPARATE TREATMENT UNDER THE ADA

In order for Granata to state a claim of disability discrimination, she must plead enough facts on which relief could be granted consistent with those allegations. *Swierkiewicz, supra.* Granata merely states that from June 16 to August 23, 2005, she "had a medical condition involving my teeth and a bone infection." (SDHR Charge, ¶ 3.) While it was not necessary for Granata to plead each element of a prima facie case of disability discrimination, it is helpful to keep those elements in mind when determining whether she has pled enough for relief to be granted consistent with her allegations. Under the ADA, a plaintiff must show, at minimum,

3

that: (1) the employer is subject to the ADA; (2) she suffers from a disability within the meaning of the ADA; (3) she could perform the essential functions of her job with or without reasonable accommodation; and (4) she suffered an adverse employment action on account of the disability. *Heyman v. Queens Village Committee for Mental Health*, 198 F.3d 68, 72 (2d Cir. 1999).

The ADA defines "disability" as a physical or mental impairment that substantially limits one or more major life activities of the individual; a record of such an impairment; or being regarded as having such an impairment. 42 U.S.C. § 12102(2). To establish a "substantial limitation", Granata must show that she is "significantly restricted as to the condition, manner, or duration under which [she] can perform a particular major life activity as compared to the condition, manner or duration under which the average person in the general population can perform the same major life activity." *Heyman*, 198 F.3d at 72.

Granata fails – directly or even impliedly – to allege that she is substantially limited in a major life activity. In fact, she never mentions any major life activity in her complaint. Prior to her "emergency surgery" on July 28th, she was able to work. Her ability to work (a major life activity) was impacted only after the "emergency surgery" and that impact was short-lived. She was out of work for just under one month and she returned with no restrictions on her ability to perform her job functions. Granata's entire condition, for that matter, was short-lived as she herself alleges: "[f]rom June 16th, 2005 through August 23rd, 2005 I had a medical condition involving my teeth and a bone infection" (SDHR Charge, ¶ 3.) Granata simply has not alleged any facts that would indicate she is disabled within the meaning of the ADA, including even a blanket assertion that she is so disabled. Since not all physical conditions, or even "disabilities" as that word is commonly used, fall within the purview of the ADA, merely claiming to suffer

from any sort of physical condition – particularly one that is admittedly temporary – is not sufficient to state a cause of action under the ADA.

This Court has previously dismissed a plaintiff's ADA claim for precisely the kind of deficiencies found in Granata's complaint. *See Graaf v. North Shore Univ. Hosp.,* 1 F.Supp.2d 318 (S.D.N.Y. 1998) (granting motion to dismiss with respect to ADA claim because plaintiff's back injury was *temporary* in nature and he was able to return to work); *Dean v. Westchester County P.R.C.,* 309 F.Supp.2d 587 (S.D.N.Y. 2004) (dismissing *pro se* plaintiff's complaint a second time, with prejudice, for failure to allege enough facts to meet the pleading requirements for an ADA lawsuit and, specifically, for failure to identify the impairment of a major life activity due to the alleged disability); *Harewood v. Beth Israel Medical Center,* 2003 U.S. Dist. LEXIS 10002, 2003 WL 21373279 (S.D.N.Y. June 13, 2003) (holding that the plaintiff did not allege facts needed to show she was disabled within the meaning of § 12102(2)(A), because she failed to allege what major life activities were hindered by her impairment and/or did not make any showing that her impairments "substantially limited" her ability to engage in such activity) (*see* Exhibit A attached for copy of case); *Hellgren v. Bell Atlantic Corp.,* 2000 U.S. Dist. LEXIS 7630, 2000 WL 726496 (S.D.N.Y. May 30, 2000) (granting motion to dismiss because, while the plaintiff listed a number of conditions that could conceivably work a substantial limitation on one or more major life activities, she did not specify in her complaint which activities were impacted or in what ways she was limited) (*see* Exhibit B attached for copy of case); *Kendricks v. Westhab, Inc.,* 2000 U.S. Dist. LEXIS 13868 (S.D.N.Y. Sep. 22, 2000) (adopting recommendation of magistrate judge in 2000 U.S. Dist. LEXIS 2089 (S.D.N.Y. Feb. 22, 2000) (dismissing ADA claim of *pro se* plaintiff for failure to allege sufficient facts to support bald assertion that plaintiff had fallen and suffered a head injury but did not identify a

major life activity in which plaintiff was substantially limited or set forth facts that described such limitations)) (*see* Exhibit C attached for copy of case).[1]

Granata's complaint is similar to those in *Graaf, Dean, Harewood, Hellgren* and *Kendricks*. This Court should dismiss Granata's disability discrimination claim because she fails to allege that she is disabled within the meaning of the ADA. Like the plaintiff in *Graaf*, Granata suffered from only a temporary condition during the summer of 2005, and therefore she was never entitled to the protections of the ADA. And, as in *Dean, Harewood, Hellgren* and *Kendricks*, Granata fails to describe a major life activity impacted by the alleged condition with her teeth and the bone infection.

---

[1]   The plaintiff in *Kendricks* subsequently filed an amended complaint and his ADA claim was again found to be deficient for primarily the same reasons. *See Kendricks*, 163 F. Supp. 2d 263 (S.D.N.Y. 2001).

## CONCLUSION

Based on the foregoing, the Hospital respectfully requests this Court to dismiss all of

Granata's claims against Locher and to dismiss the disability discrimination claim against the

Hospital pursuant to Fed. R. Civ. P. 12(b)(6), on the grounds that plaintiff's allegations of fact

fail to state a claim upon which relief may be granted.

Dated: New York, New York
      January 11, 2007

COLLAZO CARLING & MISH LLP

By: _____
     Francis Carling  (FC1016)
747 Third Avenue
New York, NY 10017-2803
(212) 758-7600

Attorneys for Defendant

7

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - -x

ANDREA GRANATA,                          :

                Plaintiff,           :            06 Civ. 4047 (SCR)

      -against-                          :

WHITE PLAINS HOSPITAL and                :
FRANCES MARY LOCHER,

                   :

            Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - -x

## CERTIFICATION OF SERVICE

I hereby certify that on January 11, 2007, I served copies of defendants' Motion to Dismiss and Brief in Support of the Hospital's Motion to Dismiss by first class mail, postage prepaid, upon plaintiff at her residence address, 22 Burdsall Drive, Port Chester, New York 10573.

                                     _____

                                       Farah Mollo

# EXHIBIT A

Case 7:06-cv-04047-SCR   Document 7   Filed 01/11/07   Page 13 of 42

Service: **Get by LEXSEE®**
Citation: **2003 U.S. Dist. LEXIS 10002**

*2003 U.S. Dist. LEXIS 10002, ***

JOAN HAREWOOD, Plaintiff, -against- BETH ISRAEL MEDICAL CENTER et al., Defendants.

View the Full Docket from LexisNexis CourtLink for 1:02cv5511
02 Civ. 5511 (HB)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

2003 U.S. Dist. LEXIS 10002

June 12, 2003, Decided
June 13, 2003, Filed

**DISPOSITION:** [*1] Defendants' motion to dismiss granted in part and denied in part.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff former employee alleged that defendant employers discriminated against her on the basis of her age and disability. The employers moved to dismiss the former employee's complaint in its entirety.

**OVERVIEW:** The former employee was 57 and began her employment with the employers as a dietary aid almost 40 years earlier. Throughout her employment, she consistently fulfilled the requirements of her position. Because she lacked money, the former employee had not completed a certification program. She later became ill and suffered an aneurysm, which put her in the hospital. The employers eventually terminated her purportedly because she had failed to obtain the requisite certification after the employers warned her nearly two and half years earlier. Prior to termination her supervisor told her to go on permanent disability. The former employee's position was filled by a younger, non-disabled person. The former employee filed a charge with the EEOC alleging age and disability discrimination. The EEOC dismissed the charge and provided her a right to sue letter. The court held under the basis of 42 U.S.C.S. § 12102(2), the former employee had shown that she was disabled under the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C.S. § 12101 et seq. She also showed she was disabled within the meaning of N.Y. Exec. Law § 290 et seq. And New York City, N.Y. Admin. Code § 8-101 et seq.

**OUTCOME:** The employers' motion to dismiss was granted-in-part and denied-in-part. Specifically, the former employee's claims for damages arising from conduct prior to a certain date were dismissed. The former employee's retaliation, claims were also dismissed. However, she had 10 days to replead her retaliation claims.

**CORE TERMS:** impairment, disability, retaliation, certification, disabled, terminated, plead, certificate, tuition, physical impairment, motion to dismiss, discriminatory, limitations period, entitled to relief, anti-retaliation, regulations, discriminatory conduct, diabetes, doctor, discriminatory act, retaliatory, pleaded, pleader, entity, unemployment insurance, permanent disability, return to work, notice, enroll, unlawful employment practice

## LexisNexis(R) Headnotes ✦ Hide Headnotes

Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Motions to Dismiss 

Civil Procedure > Pleading & Practice > Pleadings > Complaints > Requirements 

*HN1*±A motion to dismiss should be granted only if it appears beyond doubt that the plaintiff

can prove no set of facts in support of his claim which would entitle him to relief. In particular, an employment discrimination complaint must contain only a short and plain statement of the claim showing that the pleader is entitled to relief. In ruling on a motion to dismiss, the court must accept the factual allegations of the complaint as true and must draw all reasonable inferences in favor of the plaintiff. It is improper, however, to assume that a litigant can prove facts not alleged.  More Like This Headnote

Criminal Law & Procedure > Accusatory Instruments > General Overview 

Governments > Legislation > Statutes of Limitations > Time Limitations 

Labor & Employment Law > Discrimination > General Overview

HN2 ⊥In New York, pursuant to 42 U.S.C.S. § 12117(a) of the Americans with Disabilities Act of 1990, 42 U.S.C.S. § 12101 et seq., and 29 U.S.C.S. § 626(d)(2) of the Age Discrimination in Employment Act of 1967, 29 U.S.C.S. § 621 et seq., a charge shall be filed within 180 days after the alleged unlawful employment practice takes place, unless the individual has filed charges with the New York State Department of Human Rights, in which case, the charge shall be filed within 300 days of the alleged discriminatory conduct. The word "shall" makes the act of filing a charge within the specified time mandatory. Termination has been identified as an example of a "discrete act." Discrete acts that fall within the statutory time period, however, do not make timely acts that fall outside the time period. More Like This Headnote

Governments > Legislation > Statutes of Limitations > Equitable Estoppel 

Labor & Employment Law > Discrimination > Age Discrimination > Exhaustion of Remedies

Labor & Employment Law > Discrimination > Disability Discrimination > Coverage & Definitions > Discriminatory Conduct

HN3 ⊥In regard to bring a charge under 42 U.S.C.S. § 12117(a) of the Americans with Disabilities Act of 1990, 42 U.S.C.S. § 12101 et seq., and 29 U.S.C.S. § 626(d)(2) of the Age Discrimination in Employment Act of 1967, 29 U.S.C.S. § 621 et seq., the proper focus is on the time of the discriminatory act, not the point at which the consequences of the act become painful. More specifically, the limitations period commences upon the employer's commission of the discriminatory act and are not tolled or delayed pending the employee's realization that the conduct was discriminatory unless the employee was actively misled by his employer, he was prevented in some extraordinary way from exercising his rights, or he asserted his rights in the wrong forum, in which event tolling of the time bar might be permitted as a matter of fairness. Procedural requirements established by congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants.  More Like This Headnote

Labor & Employment Law > Discrimination > Retaliation > General Overview 

HN4 ⊥Although not a jurisdictional requirement, it is well settled that an employment retaliation claim generally must be properly raised with the EEOC as a prerequisite to bring the claim into federal court.  More Like This Headnote

Labor & Employment Law > Collective Bargaining & Labor Relations > Unfair Labor Practices > Interference With Protected Activities

Labor & Employment Law > Discrimination > Retaliation > General Overview

HN5 ⊥In regard to retaliation, reasonable defensive measures may not be a protected activity, even though such steps are adverse to the charging employee and result in differential

treatment.  More Like This Headnote

Civil Procedure > Pleading & Practice > Pleadings > Complaints > General Overview

*HN6* It is not proper to assume that a plaintiff can prove facts that it has not alleged. A complaint consisting only of naked assertions, and setting forth no facts upon which a court could find a violation, fails to state a claim under Fed. R. Civ. P. 1-2(b) (6).  More Like This Headnote

Labor & Employment Law > Discrimination > Disability Discrimination > Coverage & Definitions > Disabilities > Impairments > General Overview

Labor & Employment Law > Discrimination > Disability Discrimination > Coverage & Definitions > Disabilities > Record of Impairment

Labor & Employment Law > Discrimination > Disability Discrimination > Coverage & Definitions > Disabilities > Regarded With Impairment

*HN7* To plead a claim under the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C.S. § 12101 et seq., upon which a plaintiff can claim relief, she must, inter alia, allege facts showing that she had a disability within the meaning of the ADA. Under the ADA, a person with a "disability" means having: (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment. 42 U.S.C.S. § 12102(2). Merely pleading that one has an impairment does not make one disabled for purposes of the ADA.  More Like This Headnote | *Shepardize:* Restrict By Headnote

Civil Procedure > Pleading & Practice > Pleadings > Complaints > Requirements

Civil Procedure > Pleading & Practice > Pleadings > Rule Application & Interpretation

*HN8* A fundamental tenet of Fed. R. Civ. P. 8 requires that a complaint must contain at least, a short plain statement showing that the pleader is entitled to relief.  More Like This Headnote

Labor & Employment Law > Discrimination > Disability Discrimination > Coverage & Definitions > Disabilities > Impairments > Mental & Physical Impairments

Labor & Employment Law > Discrimination > Disability Discrimination > Coverage & Definitions > Qualified Individuals With a Disability

Labor & Employment Law > Discrimination > Disability Discrimination > Proof > Burdens of Proof > Employee Burdens

*HN9* Taking the first of the three possible ways a plaintiff may show she is "disabled" for the purposes of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C.S. § 12102(2)(A), courts apply a three-part test. First, the plaintiff must show that she has a "physical impairment" as defined by EEOC regulations. The EEOC regulations define a "physical impairment" to be any physiological disorder affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine. 29 C.F.R. § 1630.2(h)(1).  More Like This Headnote | *Shepardize:* Restrict By Headnote

Labor & Employment Law > Discrimination > Disability Discrimination > Coverage & Definitions > Disabilities > Impairments > Major Life Activities

Labor & Employment Law > Discrimination > Disability Discrimination > Coverage & Definitions > Qualified Individuals With a Disability

*HN10* The second requirement of a claim under the American with Disabilities Act of 1990 (ADA), 42 U.S.C.S. § 12101 et seq., is the plaintiff must plead facts showing that the alleged impairments affect one or more "major" life activities under the ADA. And third, the plaintiff must plead facts showing that the impairment "substantially limits" the major life activity identified by her. More Like This Headnote | *Shepardize: Restrict By Headnote*

Labor & Employment Law > Discrimination > Disability Discrimination > Coverage & Definitions > Disabilities > Impairments > General Overview 

Labor & Employment Law > Discrimination > Disability Discrimination > Coverage & Definitions > Disabilities > Record of Impairment 

Labor & Employment Law > Discrimination > Disability Discrimination > Proof > Burdens of Proof > Employee Burdens 

*HN11* If a plaintiff wishes to prove she is disabled for purposes of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12102(2)(B), she must show that she has a record of such impairment. According to EEOC regulations, has a record of such impairment means has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities. 29 C.FR. § 1630.2 (k). More Like This Headnote | *Shepardize: Restrict By Headnote*

Labor & Employment Law > Discrimination > Disability Discrimination > Coverage & Definitions > Covered Entities 

*HN12* There are two ways in which individuals may fall within the statutory definition of 42 U.S.C.S. § 12102(2)(C): (1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities. In both cases, it is necessary that a covered entity entertain misperceptions about the individual. It must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting. These misperceptions often result from stereotypic assumptions not truly indicative of individual ability. More Like This Headnote

Labor & Employment Law > Discrimination > Disability Discrimination > Coverage & Definitions > Disabilities > Impairments > Major Life Activities 

*HN13* Regulations promulgated under the Americans with Disabilities Act of 1990, 42 U.S.C.S. § 12101 et seq., define "major life activities" as functions such as working. 29 C.F.R. § 1630.2(i). More Like This Headnote

Labor & Employment Law > Discrimination > Disability Discrimination > Coverage & Definitions > General Overview 

Labor & Employment Law > Discrimination > Disability Discrimination > Federal & State Interrelationships 

*HN14* The New York Human Rights Law, N.Y. Exec. Law § 290 et seq., definition of disability is construed more broadly than under the Americans with Disabilities Act of 1990, 42 U.S.C.S. § 12101 et seq., and does not impose the requirement that the impairment "substantially limit" the individual's normal activities. More Like This Headnote

Labor & Employment Law > Discrimination > Accommodation 

Labor & Employment Law > Discrimination > Disability Discrimination > Coverage & Definitions > General Overview 

Labor & Employment Law > Discrimination > Disability Discrimination > Federal & State Interrelationships 



*HN15* The New York State Human Rights Law, N.Y. Exec. Law § 290 et seq., defines "disability" to mean: a physical, mental or medical impairment resulting from anatomical, physiological, genetic or neurological conditions which is demonstrable by medically accepted clinical or laboratory diagnostic techniques or a condition regarded by others as such an impairment, provided, however, that in all provisions of this article dealing with employment, the term shall be limited to disabilities which, upon the provision of reasonable accommodations, do not prevent the complainant from performing in a reasonable manner the activities involved in the job or occupation sought or held. More Like This Headnote

Civil Procedure > Pleading & Practice > Pleadings > Complaints > Requirements

Labor & Employment Law > Discrimination > Disability Discrimination > Employment Practices > Examinations & Inquiries

*HN16* The pleading requirements under Fed. R. Civ. P. 8 only demands that the plaintiff plead a short and plain statement of the claim showing that the pleader is entitled to relief and give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. More Like This Headnote

**COUNSEL:** For JOAN HAREWOOD, plaintiff: Saul D. Zabell, Somma, Zabell & Associates, L.L.P., Farmingdale, NY.

**JUDGES:** Harold Baer, Jr., U.S.D.J.

**OPINIONBY:** Harold Baer, Jr.

**OPINION: OPINION & ORDER**

**Hon. HAROLD BAER, JR., District Judge:**

Plaintiff Joan Harewood alleges that defendants Beth Israel Medical Center and Continuum Health Partners, Inc. (collectively "Beth Israel") discriminated against her on the basis of her age and disability. She brings suit for violations of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 et seq., the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 et seq., the New York State Human Rights law, Executive Law § 290 et seq. ("NYSHRL"), and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq. ("NYCHRL"). Defendants move, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP") to dismiss Harewood's complaint in its **[*2]** entirety. For the following reasons, defendants' motion to dismiss is granted-in-part and denied-in-part.

**I. MOTION TO DISMISS STANDARD**

*HN17* A motion to dismiss should be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton College, 128 F.3d 59, 63 (2d. Cir. 1997) (citations and internal quotations omitted). In particular, "an employment discrimination complaint... must contain only a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" Swierkiewicz v. Sorema, 534 U.S. 506, 122 S. Ct. 992, 998, 152 L. Ed. 2d 1 (2002) (quoting Fed. R. Civ. P. 8(a)(2)). In ruling on a motion to dismiss, the court "must accept the factual allegations of the complaint as true and must draw all reasonable inferences in favor of the plaintiff." Bernheim v. Litt, 79 F.3d 318, 321 (2d Cir. 1996). It is improper, however, to assume that a litigant can prove facts not alleged. See Papasan v. Allain, 478 U.S. 265, 286, 92 L. Ed. 2d 209, 106 S. Ct. 2932 (1986); **[*3]** Associated Gen. Contractors v. California State Council of Carpenters, 459 U.S. 519, 526, 74 L. Ed. 2d 723, 103 S. Ct. 897 (1983).

**II. FACTUAL BACKGROUND**

Harewood is fifty-seven years old and began her employment with defendants as a dietary aid on or about December 1962. Compl. PP 18-19. Throughout the term of her employment with defendants, Harewood consistently fulfilled the requirements of her position. *Id.* PP 20, 23. On or about November 1998, defendants advised Harewood that the Joint Commission on Accreditation of Healthcare Organizations ("JCAHO") would be conducting an inspection and that all employees needed to be up to date with their certifications. *Id.* P 26. Defendants "told" Harewood shortly thereafter to enroll in a program to obtain the necessary certification. *Id.* P 27; Pl. Mem. at 2. Because of financial hardships, however, Harewood was unable to attend the first certificate program, which was offered in January 1999. She did not, however, inform anyone of her financial difficulties until after Evelyn Gacula, the Director of Food and Nutrition Services, advised her in April 1999 that she had to obtain a certificate. Compl. **[*4]** P 30. Prompted by this second notice from defendants, Harewood contacted the Beth Israel Medical Center Education Department to inquire about obtaining financial aid to enroll in the certification program. *Id.* P 31. Because Harewood had not obtained the necessary certification or enrolled into a certification program by April 1999, Harewood's supervisor, Myrna Mercado, advised her "that she must show proof that she was registered in a certificate program before June of 1999." *Id.* P 32. In response to Harewood's inquiry, Barry Schlossberg, Head of Food and Nutrition Services, told plaintiff to enroll and that defendants would pay the tuition. *Id.* P 35. Harewood, enrolled the following day in the next available certificate program, which commenced in September 1999. *Id.* P 36.

In September 1999, Harewood approached Schlossberg to obtain the promised tuition of $ 200, which Gacula provided to her the following week. *Id.* PP 38-39. After completing the first of the four segments of the certification program, Harewood asked Schlossberg in December 1999 to have defendants cover the tuition for the following semester. *Id.* P 42. Schlossberg said nothing in response to **[*5]** Harewood's request, and defendants never provided the requested tuition payment, which was required to register for the next segment of the certificate program. *Id.* PP 43-44. Despite failing to complete the remainder of the certificate program, defendants neither warned Harewood again that she needed to be certified nor mentioned anything about the tuition payment that she sought. *Id.* P 45.

Towards the end of October 2000, Harewood became ill and suffered an aneurysm, which put her in the hospital. *Id.* PP 47-48. Before leaving the hospital, Harewood spoke with Gacula, who informed her that she had to work the following weekend. *Id.* P 49. Although defendants knew Harewood had a history of diabetes and heart problems and that returning to work so soon was against her doctor's recommendation, Gacula reiterated that she had to come to work. *Id.* PP 46, 50, 51. Two days after reporting to work, Harewood checked into the hospital with a blood clot, which resulted in her going on disability leave. *Id.* P 52. During this leave, Mercado told Harewood to instruct her doctor to send her back to work the next time she saw him, which was on December 28, 2000. *Id.* PP 55-56. At **[*6]** the December 28, 2000 appointment, Harewood's doctor hospitalized here due to her diabetes and liver enzyme problems. *Id.* P 57. She remained there until January 24, 2001. *Id.* P 58. Harewood informed Mercado a few months later that although the results of her liver biopsy "were not good," her doctor would permit her to return to work. Harewood attempted returned to work on April 30, 2001, at which time, Mercado advised her to go on permanent disability, and shortly thereafter, on the same day, terminated her employment. *Id.* PP 62-64. According to Harewood, defendants contend that they terminated her because she had failed to obtain the requisite certification after warning her nearly two and half years before that everyone needed to be certified. *Id.* P 65.

Harewood contends that her position was filled by a younger, non-disabled person, despite the fact that she was able to satisfactorily perform the duties and functions of her position. *Id.* PP 66-67. After defendants terminated her employment, Harewood sent a letter to defendants on June 20, 2001, complaining about the discriminatory treatment that she received. *Id.* PP 68. When Harewood subsequently applied **[*7]** for unemployment insurance benefits, defendants objected to her application for unemployment insurance benefits. *Id.* P 70.

Harewood filed a charge with the EEOC on January 10, 2002, alleging age and disability discrimination. Def. Exh. B. On May 17, 2002, the EEOC dismissed Harewood's charge, finding there was insufficient evidence to substantiate her discrimination claim, and provided her a right to sue letter.

## II. DISCUSSION
## A. CONDUCT BEFORE MARCH 10, 2001

Defendants argue that any alleged discriminatory acts before March 10, 2001 are untimely. Although not entirely clear from the complaint, it appears that plaintiff contends that the discriminatory conduct on the basis of age and disability before March 10, 2001 includes refusing to pay tuition for the certification program that she needed to become certified and insisting she return to work before fully recovering from hospitalization. n1

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 Even if I were to conclude that claims for recovery against such conduct were not time-barred, in my view, Harewood has not alleged sufficient facts to demonstrate that the conduct before March 10, 2001 was discriminatory in nature.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - **[*8]**

HN2🔁Pursuant to 42 U.S.C. § 12117(a) of the ADA and 29 U.S.C. § 626(d)(2) of the ADEA, a charge "shall" be filed within 180 days after the alleged unlawful employment practice takes place, unless the individual has filed charges with the New York State Department of Human Rights ("NYSDHR"), in which case, the charge "shall" be filed within 300 days of the alleged discriminatory conduct. See Ford v. Fineson, 81 F.3d 304, 307 (2d Cir. 1996); Harris v. City of New York, 186 F.3d 243, 247-48 (2d Cir. 1999). Harewood argues that the 300 day limitations period should not begin to run until April 30, 2001, when she was terminated. Defendants do not dispute that Harewood's employment terminated within the 300 day period, but rather, because she filed her EEOC complaint on January 11, 2002, they argue that acts before March 10, 2001 are not actionable because they fall outside the 300 day statutory window. Acts performed before March 10, 2001 are not actionable unless it can be shown that the conduct alleged in the EEOC complaint was part of a single, unlawful employment practice to create a "continuing violation. **[*9]** " AMTRAK v. Morgan, 536 U.S. 101, 117-18, 153 L. Ed. 2d 106, 122 S. Ct. 2061 (2002). As the United States Supreme Court noted in National R.R. Passenger Corp. v. Morgan, the word "shall" in section 2000(e)-5(e)(1) "makes the act of filing a charge within the specified time mandatory." 536 U.S. at 109. Here, the only discernible discriminatory conduct charged in the EEOC complaint within the 300 day period is Harewood's termination, which the Supreme Court identified as an example of a "discrete act" Id. at 114. "Discrete acts that fall within the statutory time period[, however,] do not make timely acts that fall outside the time period." Id. at 112.

Essentially, Harewood seeks to equitably toll the limitations period to preserve her claims of unlawful discriminatory conduct before March 10, 2001. Harewood argues that the limitations period should not begin running until "the date when the employee receives 'definite notice' of the discriminatory act sufficient to make out a prima facie case." Pl. Mem. at 7 (citing Miller v. International Tel. & Tel. Corp., 755 F.2d 20 (2d Cir 1985), and that she did **[*10]** not become aware of the discriminatory nature of defendants' conduct that occurred before March 10, 2001 until she was later terminated on April 30, 2001. Contrary to plaintiff's belief, HN3🔁"the proper focus is on the time of the *discriminatory act*, not the point at which the *consequences* of the act become painful." Chardon v. Fernandez, 454 U.S. 6, 8, 70 L. Ed. 2d 6, 102 S. Ct. 28 (1981) (emphasis in original). More specifically, the limitations period "commence[s] upon the employer's commission of the discriminatory act and are not tolled or delayed pending the employee's realization that the conduct was discriminatory unless the employee was actively misled by his employer, he was prevented in some extraordinary way from exercising his rights, or he asserted his rights in the wrong forum, in which event tolling of the time bar might be permitted as a matter of fairness." Miller, 755 F.2d at 24 (citing Smith v. American President Lines, Ltd., 571 F.2d 102, 109 (2d Cir. 1978). Here, Harewood alleges no facts that might show that equitable estoppel applies or that there are extraordinary circumstances that merit **[*11]** equitably tolling the statute of limitations period. Cf. id. ("grounds [for equitable tolling] might

exit if the employee could show that it would have been impossible for a reasonably prudent person to learn that his discharge was discriminatory"). Harewood's discrimination claims based on the alleged conduct before March 10, 2001 are therefore time barred and must be dismissed. See *Baldwin County Welcome Ctr. v. Brown,* 466 U.S. 147, 152, 80 L. Ed. 2d 196, 104 S. Ct. 1723 (1984) ("Procedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants.").

## B. FAILURE TO STATE A CLAIM FOR RETALIATION

Defendants contend that Harewood's retaliation claim must fail because she failed to administratively exhaust her retaliation claim through the EEOC. **HN4** Although not a jurisdictional requirement, it is well settled that an employment retaliation claim generally must be properly raised with the EEOC as a prerequisite to bring the claim into federal court. *See, e.g., Holtz v. Rockefeller & Co., Inc.,* 258 F.3d 62, 82-83 (2d Cir. 2001); *Francis v. City of New York,* 235 F.3d 763, 768 (2d Cir. 2000); **[*12]** *Miller,* 755 F.2d at 23. Here, Harewood did not indicate that her discrimination claim with the EEOC was based on retaliation, *see* Def. Exh. B (cover page), nor did she allege any facts in her EEOC complaint regarding her view that the opposition by defendants to her application for unemployment benefits was a retaliatory act. *See id.* (Harewood Affid.). The EEOC complaint was filed near the beginning of January 2002, which appears to be months after the alleged retaliatory conduct. Although she did not include the retaliation claim in her EEOC complaint, Harewood avers that it is sufficiently related to the initial charge that it need not have been pleaded to the EEOC. Pl. Mem. at 10 (citing *Butts v. City of New York Dep't of Housing,* 990 F.2d 1397, 1401 (2d Cir. 1993)). The Second Circuit cautioned in *Butts* that the purpose of the notice prerequisite is "to encourage settlement of discrimination disputes through conciliation and voluntary compliance." *Id.* at 1401. The notice provision "would be defeated if a complainant could litigate a claim not previously presented to and investigated by the EEOC." *Id.*

The Second **[*13]** Circuit has enumerated several situations when a claim may be considered "reasonably related," such that the plaintiff may assert the claim in federal court even though it is not pleaded in an EEOC complaint. n2 Here, plaintiff has failed to meet any of the pleading requirements used to circumvent the general requirement that a claim must first be raised with the EEOC before the claim may be asserted in federal court. *Cf. Butts,* 990 F.2d at 1402-03. Additionally, even under the liberal pleading standard of Rule 8(a) of the Federal Rules of Civil Procedure, Harewood's retaliation claim must fail because she does not allege sufficient facts to show that she is entitled to relief. The Second Circuit cautioned that **HN5** "reasonable defensive measures" may not be a "protected activity," even though such steps are adverse to the charging employee and result in differential treatment." *U.S. v. New York City Transit Authority,* 97 F.3d 672, 677 (2d Cir. 1996) (analyzing Title VII anti-retaliation provision); *see* 42 U.S.C. § 12203(a) (ADA anti-retaliation provision); 29 U.S.C. § 623(c)(ADEA anti-retaliation provision); **[*14]** *Manzi v. DiCarlo,* 62 F. Supp. 2d 780, 793-94 (E.D.N.Y. 1999)(noting anti-retaliation provision of Title VII, ADA and ADEA are virtually identical). Alleging that defendants, after receiving Harewood's letter complaining of her alleged discriminatory treatment, opposed her application for unemployment benefits, without more, does not provide a basis upon which relief may be granted. *See Whalley v. Reliance Group Holdings, Inc.,* 2001 U.S. Dist. LEXIS 427, 2001 WL 55726, at *12 (S.D.N.Y. Jan. 22, 2001)(granting summary judgment on retaliation claim under ADA). "Employers frequently challenge a former employee's application for unemployment insurance benefits when the employer has terminated the employee for cause." *Roman v. Cornell Univ.,* 53 F. Supp. 2d 223, 245 (N.D.N.Y. 1999). It is not difficult, however, to assume facts, from which I could infer that the opposition was retaliatory in nature and which would demonstrate the necessary extenuating circumstances to warrant excusing plaintiff's failure to allege the retaliation claim in her EEOC complaint. It would be improper for me, however, to assume facts exist that Harewood has failed to allege. *See Associated Gen.,* 459 U.S. at 526 **[*15]** **HN6** ("it is not ... proper to assume that the [plaintiff] can prove facts that it has not alleged"); *Gregory v. Daly,* 243 F.3d 687, 692 (2d Cir. 2001) ("[A] complaint consisting [only of] naked assertions, and setting forth no facts upon which a court could find a violation of the Civil Rights Acts, fails to state a claim under Rule 12(b)(6)."). Accordingly, Harewood's retaliation claims are dismissed with leave to replead within 10 days of the date hereof.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n2 Although the Second Circuit in *Butts* stated that a district court may only hear claims "included in an EEOC charge or are based on conduct ***subsequent*** to the EEOC charge which is 'reasonably related' to that alleged in the EEOC charge," *Butts,* 990 F.2d at 1401 (emphasis added), the Second Circuit later clarified in *Francis v. City of New York,* that the "benefit of the *Butts* 'reasonably related' test is not limited to plaintiffs alleging post-charge conduct." 235 F.3d 763, 766 (2d Cir. 2000).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

[*16]

## C. FAILURE TO ALLEGE A QUALIFYING DISABILITY

*HN7*To plead a claim under the ADA upon which Harewood could claim relief, she must, *inter alia,* allege facts showing that she had a disability within the meaning of the ADA. *Weixel v. Board of Educ. of City of New York,* 287 F.3d 138, 146-47 (2d Cir. 2002). Under the ADA, a person with a "disability" means having:

> (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
> (B) a record of such an impairment; or
> (C) being regarded as having such an impairment.

42 U.S.C. § 12102(2). Merely pleading that one has an impairment does not make one disabled for purposes of the ADA. *Toyota Motor Manufacturing, Kentucky, Inc. v. Williams,* 534 U.S. 184, 195, 151 L. Ed. 2d 615, 122 S. Ct. 681 (2002). Harewood contends, in conclusory fashion, that she adequately pleaded a qualifying disability under the ADA, and suggests that any deficiency that may exist in the pleading may be glossed over in view of the liberal pleading standard set by Rule 8 and the Supreme Court's renouncement in *Swierkiewicz* [*17] of the requirement that a plaintiff plead facts to make out *a prima facie* case of discrimination. Harewood loses sight, however, of *HN8*a fundamental tenet of Rule 8, which requires that the complaint must contain at least, a short plain statement showing that the pleader is ***entitled to relief.***

*HN9*Taking for instance the first of the three possible ways a plaintiff may show she is "disabled" for the purposes of the ADA, see 42 U.S.C. § 12102(2)(A), courts apply a three-part test. *Colwell v. Suffolk County Police Dep't,* 158 F.3d 635, 641 (2d Cir. 1998). First, the plaintiff must show that she has a "physical impairment" as defined by EEOC regulations. *Colwell,* 158 F.3d at 641-42. The EEOC regulations define a "physical impairment" to be "any physiological disorder ... affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), ***cardiovascular,*** reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and ***endocrine.***" 29 C.F.R. § 1630.2(h)(1) (emphasis added); *see also Toyota Motor Mfg., Kentucky, Inc. v. Williams,* 534 U.S. 184, 195, 151 L. Ed. 2d 615, 122 S. Ct. 681 (2002). [*18] Here, Harewood alleges that she has heart and diabetes problems, which corresponds to a cardiovascular and endocrine disorder, respectively. Harewood's health problems may therefore be classified as an "impairment" under the ADA.

*HN10*Second, the plaintiff must plead facts showing that the alleged impairments affect one or more "major" life activities under the *ADA. Colwell,* 158 F.3d at 642. Harewood fails to allege, however, what major life activities, if any, are hindered by her impairment. And third, the

plaintiff must plead facts showing that the impairment "substantially limits" the major life activity identified by her. *Id.* at 643. Even if I assumed that Harewood had identified a major life activity that was hindered by her condition, she does not make any showing that her impairments "substantially limited" her ability to engage in such activity. Accordingly, Harewood has not alleged facts needed to show she is disabled within the meaning of the ADA under § 12102(2) (A).

*HN11*As to the second way a plaintiff may prove she is disabled for purposes of the ADA, *see* 42 U.S.C. § 12102(2)(B), she must show that she "has a record [*19] of such impairment." According to EEOC regulations, "**has a record of such impairment** means has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." 29 C.FR. § 1630.2(k) (emphasis in original). As discussed above, however, Harewood has failed to allege sufficient facts to show that she has, much less has been misclassified as having, a physical impairment that substantially limits a major life activity. Further, she has failed to make any showing that she has a history of such impairment. Accordingly, Harewood has not alleged anything from which I could infer that she is disabled within the meaning of § 12102(2)(B).

In the absence of factual allegations showing that Harewood is disabled within the meaning of the ADA, I can not sustain her ADA claim without improperly assuming facts that are not alleged. It is only under the last basis of § 12102(2) that Harewood has shown that she is disabled under the ADA. See 42 U.S.C. § 12102(2)(C). *HN12*"There are two ... ways in which individuals may fall within this statutory definition: (1) [*20] a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities." *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 489, 144 L. Ed. 2d 450, 119 S. Ct. 2139 (1999). In *Sutton,* the Supreme Court explained that:

> In both cases, it is necessary that a covered entity entertain misperceptions about the individual--it must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting. These misperceptions often "result from stereotypic assumptions not truly indicative of ... individual ability."

*Id.* Here, Harewood alleges that despite being able to return to work and satisfactorily perform the duties of her position, Compl. P 67, Mercado, her supervisor, told her to go on permanent disability, *Id.* P 63. Construing the alleged facts in a light most favorable to Harewood, one can reasonably infer that Mercado's advice [*21] to Harewood to go on permanent disability reflects a mistaken impression that her alleged impairment substantially limited her ability to work. See *Buckley v. Consolidated Edison Co. of New York, Inc.,* 155 F.3d 150, 154 (2d Cir. 1998) *HN13*("Regulations promulgated under the Act define 'major life activities' as 'functions such as ... working." (citing 29 C.F.R. § 1630.2(i)). The allegations suffice to show that she may be considered disabled under the ADA.

*HN14*The NYHRL definition of disability is construed more broadly than under the ADA and does not impose the requirement that the impairment "substantially limit" the individual's normal activities. See *State Division of Human Rights v. Xerox Corp.,* 65 N.Y.S.2d 213, 491 N.Y.S.2d 106, 480 N.E.2d 695 (1985); *Reeves v. Johnson Controls World Services, Inc.,* 140 F.3d 144, 154-55 (2d Cir. 1998); *see also Weissman v. Dawn Joy Fashions, Inc.,* 214 F.3d 224, 233 (2d Cir. 2000). Nevertheless, defendants contend that the state law claims for disability discrimination must also be dismissed because Harewood has failed to adequately plead a "disability" within [*22] the meaning of the New York Human Rights Law ("NYHRL"). Given the definition afforded by the NYRHL n3, Harewood's pleading suffices, at this stage of the proceeding, to show that she is disabled within the meaning of NYHRL. See *Epstein v. Kalvin-Miller Int'l, Inc.,* 100 F. Supp. 2d 222, 229-30 (S.D.N.Y. 2000) ("plaintiff's type 2 diabetes and heart disease, even as treated, remain 'medical disabilities within the meaning of the NYHRL.").

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n3 *HN15* The NYHRL defines "disability" to mean:

> (a) a physical, mental or medical impairment resulting from anatomical, physiological, genetic or neurological conditions which ... is demonstrable by medically accepted clinical or laboratory diagnostic techniques or ... (c) a condition regarded by others as such an impairment, provided, however, that in all provisions of this article dealing with employment, the term shall be limited to disabilities which, upon the provision of reasonable accommodations, do not prevent the complainant from performing in a reasonable manner the activities involved in the job or occupation sought or held.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - -

**[*23]**

## D. FAILURE TO ADEQUATELY PLEAD A CLAIM UNDER TITLE VII AND ADA

Lastly, defendants argue that Harewood's Title VII n4 and ADA claims must be dismissed because she has not alleged sufficient facts to show that she was terminated on account of her disability. I disagree. *HN16* The pleading requirements under Rule 8 only demands that the plaintiff plead a "a short and plain statement of the claim showing that the pleader is entitled to relief ... [and] give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz, 122 S. Ct. at 998.* Defendants argue that Harewood was no longer qualified for the position because she had failed to obtain the necessary certification. Drawing all inferences, as I must, in favor of Harewood on a motion to dismiss, Mercado's effort to bring Harewood back to work and failure to dissuade her from returning to work in April 2001 before completing the certification suggest that she may well have been qualified, in the defendants' view, to continue working for them, and while it may turn out that defendants had a good business reason to terminate Harewood or that she was unqualified, my **[*24]** task here is to assess whether she has alleged sufficient facts upon which relief may be granted, not whether she will eventually prevail. The plaintiff meets her burden to sustain her ADA claim by alleging both a qualifying disability and that she was terminated and replaced by someone non-disabled, despite her alleged ability to adequately perform the responsibilities of her job.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n4 Although both parties seem to contend that the complaint includes a Title VII claim, none of the counts relate to employment discrimination on the basis of "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). Accordingly, I find no basis or reason to rule on whether plaintiff has adequately plead a Title VII claim because no such allegation is present in the complaint.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - -

## III. CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is granted-in-part and denied-in-part. Specifically, plaintiff's claims for damages arising from conduct before March, 10, 2001

and **[*25]** for retaliation, *i.e.,* claims 7-10, are dismissed. Plaintiff has 10 days from the date hereof to replead her retaliation claims.

Harold Baer, Jr.

U.S.D.J.

**SO ORDERED**

June 12 2003

Service: **Get by LEXSEE®**
Citation: **2003 U.S. Dist. LEXIS 10002**
View: Full
Date/Time: Tuesday, July 18, 2006 - 3:20 PM EDT

\* Signal Legend:
- Warning: Negative treatment is indicated
- Questioned: Validity questioned by citing refs
- Caution: Possible negative treatment
- Positive treatment is indicated
- Citing Refs. With Analysis Available
- Citation information available
\* Click on any *Shepard's* signal to *Shepardize®* that case.

 **LexisNexis®**    About LexisNexis  |  Terms & Conditions
Copyright © 2006 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

# EXHIBIT B

Service: Get by LEXSEE®
Citation: 2000 U.S. Dist. LEXIS 7630

*2000 U.S. Dist. LEXIS 7630, ***

DONNA HELLGREN, Plaintiff, -against- BELL ATLANTIC CORPORATION, Defendant.

99 Civ. 11937(CM)(GAY)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

2000 U.S. Dist. LEXIS 7630

May 30, 2000, Decided

**DISPOSITION:** [*1] Defendant's motion to dismiss granted in part and denied in part.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Defendant employer moved to dismiss plaintiff's disability discrimination and retaliation in violation of the Americans with Disabilities Act and disability discrimination under the New York State Human Rights Law complaint for lack of subject matter jurisdiction and failure to state a claim.

**OVERVIEW:** Plaintiff filed a complaint after the Equal Opportunity Commission (EEOC) granted her a right to sue letter on her discrimination and retaliation claims under the Americans with Disabilities Act (ADA) and under the New York State Human Rights Law. Defendants filed for a motion for dismissal based on subject matter jurisdiction and for failure to state a claim. The court denied the motion to dismiss as to subject matter jurisdiction, because 29 C.F.R. § 1601.28(a), did not prohibit the EEOC from filing an early right to sue letter. The court also denied the motion to dismiss the retaliation claim because plaintiff's complaint alleged all the facts that were part of her EEOC charge and no others. However, the court granted dismissal with leave to replead, finding plaintiff did not specify in her complaint which activities were impacted, or in what ways she was limited, to constitute disabled. Rather than specify how her ailments affected her major life activities, she merely parroted the statutory language.

**OUTCOME:** The court denied the motion in part, but granted it as to plaintiff's first cause of action for failure to allege with sufficient specificity how her medical problems affected her or which of her major life activities was substantially limited by her conditions. However, the court granted plaintiff leave to replead to state how she was disabled.

**CORE TERMS:** disability, retaliation, motion to dismiss, aggrieved party, specify, intentional infliction of emotional distress, gender discrimination, cause of action, first cause, investigate, expiration, mitigating, impairment, persuasive, asserting, backlog, asthma, box, Disabilities Act, subject matter jurisdiction, time-barred

### LexisNexis(R) Headnotes ◆ Hide Headnotes

Labor & Employment Law > U.S. Equal Employment Opportunity Commission > Time Limitations > General Overview 

*HN1* ⯈ 29 C.F.R. § 1601.28(a) does not prohibit the Equal Employment Opportunity Commission (EEOC) from issuing an early right to sue notice prior to the expiration of a 180-day period; (2) the purpose of the 180-day period is to protect the aggrieved party from extended administrative proceedings or bureaucratic backlog; and (3) where the EEOC determines, due to its huge backlog, that it cannot investigate an aggrieved party's charge within the 180-day period and notifies the aggrieved party that it is terminating its investigative efforts, it is pointless for the aggrieved party to stand by and mark time until the 180-day period expires. More Like This Headnote |

*Sheparize:* Restrict By Headnote



Labor & Employment Law > Discrimination > Disability Discrimination > General Overview

Labor & Employment Law > Discrimination > Gender & Sex Discrimination > Exhaustion of Remedies

Labor & Employment Law > Discrimination > Retaliation > Statutory Application > Americans With Disabilities Act



*HN2* A claim of retaliation for asserting one's rights under the Americans with Disabilities Act (ADA) is sufficiently related to the underlying ADA claim to warrant following the rule that a district court has jurisdiction to hear all claims that are alike or reasonably related to the Equal Employment Opportunity Commission (EEOC) charge, or that can be expected to grow out of an investigation into the facts constituting the alleged discriminatory behavior. More Like This Headnote | *Shepardize:* Restrict By Headnote

**COUNSEL:** For DONNA HELLGREN, plaintiff: Daniel William Isaacs, Isaacs & MacAneney, L.L.P., New York, NY.

**JUDGES:** Colleen McMahon, U.S.D.J.

**OPINIONBY:** Colleen McMahon

**OPINION:** MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

McMahon, J.:

Defendant Bell Atlantic Corporation has moved to dismiss the complaint for lack of subject matter jurisdiction and failure to state a claim. The motion is disposed of as follows:

1. As counsel were advised when they appeared before me for a Fed.R.Civ.P. 16 conference, the motion to dismiss for lack of subject matter jurisdiction, based on the EEOC's determination to issue a right to sue letter prior to the expiration of 180 days from the filing of the charge, is denied. While Bell Atlantic calls my attention to a number of cases, including the District of Columbia Circuit's decision in Martini v. Federal National Mortgage Ass'n., 336 U.S. App. D.C. 289, 178 F.3d 1336 (D.C. Cir. 1999), in which that argument was sustained, I find the reasoning of a line of cases that holds otherwise to be far more persuasive. See Sims v. MacMillan, 22 F.3d 1059 (11th Cir. 1994); Saulsbury v. Wismer and Becker, Inc., 644 F.2d 1251 (9th Cir. 1980). **[*2]** See also Parker v. Metropolitan Transportation Authority, 97 F. Supp. 2d 437, 2000 U.S. Dist. LEXIS 6309, 2000 WL 556323 *7 (S.D.N.Y. 2000)(discussing the Sims-Saulsbury line of cases and the Martini decision). The Eleventh Circuit explained its rationale in Sims as follows:

> (1) *HN1* 29 C.F.R. § 1601.28(a) does not prohibit the EEOC from issuing an early right to sue notice prior to the expiration of a 180-day period; (2) the purpose of the 180-day period is to protect the aggrieved party from extended administrative proceedings or bureaucratic backlog; and (3) where the EEOC determines, due to its huge backlog, that it cannot investigate an aggrieved party's charge within the 180-day period and notifies the aggrieved party that it is terminating its investigative efforts, it is pointless for the aggrieved party to stand by and mark time until the 180-day period expires.

Sims, 22 F.3d at 1061. See also Palumbo v. Lufthansa German Airlines, 1999 U.S. Dist. LEXIS 11412, 98 Civ. 5005, 1999 WL 540446 (S.D.N.Y. Jul. 26, 1999); Rosario v. Copacabana Night Club, Inc., 1998 U.S. Dist. LEXIS 7840, 97 Civ. 2052, 1998 WL 273110 (S.D.N.Y. May 28,

1998); Figueira v. Black Entertainment Television, 944 F. Supp. 299 (S.D.N.Y. 1996). **[*3]**

As I noted in Parker, because the EEOC and state administrative agencies are so overwhelmed with charges that they could not possibly investigate more than a small fraction of them within 180 days, I find the Sims-Saulsbury line of cases to be persuasive.

2. The motion to dismiss the first cause of action for failure to allege with sufficient specificity how Plaintiff's medical problems affect her or which of her major life activities is substantially limited by her conditions is granted, with leave to replead. While Plaintiff lists a number of conditions that could conceivably work a substantial limitation on one or more of her major life activities, she does not specify in her complaint which activities are impacted or in what ways she is limited. Rather than specify how her ailments affect her major life activities, Plaintiff merely parrots the statutory language, stating that her impairments "substantially limit one or more of plaintiff's major life activities." (Cplt P 8.) Although one can easily infer how chronic conditions such as asthma, sinusitis and Rosacea might inhibit major life activities, the complaint needs to spell it out -- especially in light of last term's **[*4]** Supreme Court decisions involving disability and limitations on major life activities, which post-date the opinions cited by Plaintiff in her responding brief. See Murphy v. United Parcel Service, Inc. 527 U.S. 516, 119 S. Ct. 2133, 144 L. Ed. 2d 484 (1999)(holding that determination whether employee's impairment "substantially limits" one or more major life activities is made with reference to the mitigating measures he employs); Albertsons, Inc. v. Kirkingburg, 527 U.S. 555, 119 S. Ct. 2162, 144 L. Ed. 2d 518 (1999)(holding that individuals with monocular vision are not per se "disabled" within the meaning of the ADA but must prove their disability on a case-by-case basis by offering evidence that the extent of the limitation on a major life activity in terms of their own experience is substantial); Sutton v. United Airlines, Inc. 527 U.S. 471, 119 S. Ct. 2139, 144 L. Ed. 2d 450 (holding that corrective and mitigating measures should be considered in determining plaintiff's disability under the ADA). Because the complaint does not specify how Plaintiff's major life activities are impaired, the first cause of action must be dismissed. **[*5]** See, e.g., Nowak v. EGW Home Care, Inc., 82 F. Supp. 2d 101, 2000 WL 146817, at 8 (W.D.N.Y. 2000); Sacay v. Research Found. of the City Univ., 44 F. Supp. 2d 496, 501 (E.D.N.Y. 1999); Parisi v. Coca-Cola Bottling, Co., 995 F. Supp. 298, 302 (E.D.N.Y. 1998)(citation omitted) aff'd, 172 F.3d 38 (2d Cir. 1999); Sherman v. New York Life Ins. Co., 1997 U.S. Dist. LEXIS 11411, No. 96 Civ. 9665, 1997 WL 45204 (S.D.N.Y. Aug. 7, 1997). However, this is a defect that can be remedied by amending the pleading. The Court grants the Plaintiff 20 days from the date of this decision to serve an amended complaint.

3. The motion to dismiss the second cause of action for failure to exhaust administrative remedies is denied. The second claim sounds in retaliation. Plaintiff alleges that she was retaliated against for asserting her rights under the ADA. Plaintiff checked the "Disability" box on the EEOC reporting form, but not the "Retaliation" box. This Court has noted on more than one occasion that the EEOC should redesign the form to make it more apparent to litigants (especially pro se litigants, but some attorneys, too) that a claim of retaliation **[*6]** is not automatically subsumed by the primary charge of discrimination on the basis of race/gender/disability/age/etc. [HN2] However, a claim of retaliation for asserting one's rights under the ADA is sufficiently related to the underlying ADA claim to warrant following the rule that a district court has jurisdiction to hear all claims that are "alike or reasonably related" to the EEOC charge, or that can be expected to grow out of an investigation into the facts constituting the alleged discriminatory behavior. See Dikcis v. Indopco, Inc., 1997 U.S. Dist. LEXIS 5276 (N.D. Ill. April 18, 1997). Here, Plaintiff's complaint alleges all the facts that were alleged as part of her EEOC charge and no others. (See Ex. B. to the Notice of Motion.) She cannot be accused of changing her theory (from race discrimination to gender discrimination, for example), because an inference of retaliation is fairly inferred from the allegations of cascading misbehavior on the part of Plaintiff's supervisors as she persisted in pestering them to give her a well-ventilated but enclosed work space.

4. Since I assume that the complaint will be amended, I feel I owe it to the parties to explain **[*7]** my thinking on the issue of the statute of limitations. In footnotes printed in type so small that I can barely detect it, Defendant makes a motion (or at least suggests arguments) to dismiss certain claims as time barred. I know this only because I have received a number of

letters on the subject; I do not, as a rule, read footnotes that can only be made out with the aid of a magnifying glass. The complaint asserts four causes of action: one in disability discrimination under the Americans with Disabilities Act, one in retaliation for attempting to enforce her rights under the Americans with Disabilities Act, one in disability discrimination under the New York State Human Rights Law and one in intentional infliction of emotional distress. None of these claims is time-barred on its face. We are at the pleading stage. If it appears, after discovery, that Plaintiff is alleging particular instances of discrimination that occurred beyond any of the applicable statutes of limitations, we will deal with Defendant's challenges on a full record. It may be that evidence about time-barred occasions when Plaintiff experienced difficulty before obtaining an accommodation for her asthma will be **[*8]** admissible, even if those occasions do not afford any basis for relief, because it is relevant to issues that are involved in the case, such as Defendant's intentions in August 1998 and thereafter where Plaintiff is concerned. n1 This is an issue more properly raised through in limine motions -- if we ever get that far in this action.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n1 I note that Plaintiff has not alleged any claim of gender discrimination in her complaint (notwithstanding several paragraphs in the Statement of Facts and in the EEOC charge that allude to same). Thus, it would appear that there is no contention in this case that issues of sexual name-calling, which purportedly began in 1988, well prior to the limitations date, give rise to any cause of action.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

5. Defendant seeks dismissal of the claim for intentional infliction of emotional distress and probably will be tempted to do so again when an amended pleading is served. Were I to reach the issue in connection with the instant motion, I would deny the motion without prejudice to a summary **[*9]** judgment motion on a fuller record. In general, such claims do not survive dispositive motions. It is a rare instance where employer misconduct, no matter now horrid it seems to the employee, rises to the level of outrageousness required to sustain a claim for intentional infliction of emotional distress, which is a highly disfavored tort under New York law. Nonetheless, I would not be prepared to dismiss the claim as a matter of law on the barebones allegations of this particular complaint.

This constitutes the decision and order of the Court.

Dated: May 30, 2000

Colleen McMahon

U.S.D.J.

Service: **Get by LEXSEE®**
Citation: **2000 U.S. Dist. LEXIS 7630**
View: Full
Date/Time: Tuesday, July 18, 2006 - 3:26 PM EDT

* Signal Legend:
● - Warning: Negative treatment is indicated
▣ - Questioned: Validity questioned by citing refs
⚠ - Caution: Possible negative treatment
◆ - Positive treatment is indicated
Ⓐ - Citing Refs. With Analysis Available
ⓘ - Citation information available
* Click on any *Shepard's* signal to *Shepardize®* that case.

 **LexisNexis®** About LexisNexis | Terms & Conditions
Copyright © 2006 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

# EXHIBIT C

Get a Document - by Citation - 2000 U.S. Dist. LEXIS 13868    Page 1 of 2

Case 7:06-cv-04047-SCR    Document 7    Filed 01/11/07    Page 32 of 42

Service: Get by LEXSEE®
Citation: 2000 U.S. Dist. LEXIS 13868

*2000 U.S. Dist. LEXIS 13868, \**

MAVERICK KENDRICKS, Plaintiff, -against- WESTHAB, INC., Defendant.

98 Civ. 158 (VM)(RLE)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

2000 U.S. Dist. LEXIS 13868

September 22, 2000, Decided

**PRIOR HISTORY:** Adopting Magistrate's Document of February 22, 2000, Reported at: 2000 U.S. Dist. LEXIS 2089.

**DISPOSITION:** Motion to dismiss the complaint under Fed. R. Civ. P. 12(b)(6) granted, and complaint dismissed with leave to re-plead claims of employment discrimination based on disability and retaliatory discharge.

**COUNSEL:** MAVERICK A. KENDRICK'S, plaintiff, Pro se, Yonkers, NY.

**JUDGES:** VICTOR MARRERO, United States District Judge.

**OPINIONBY:** VICTOR MARRERO

**OPINION:** ORDER

VICTOR MARRERO, United States District Judge.

Plaintiff Maverick Kendricks, *pro se*, brought suit against Westhab, Inc. ("Westhab") alleging employment discrimination. On October 12, 1999, Westhab moved to dismiss the complaint under Fed. R. Civ. P. 12(b)(6). Magistrate Judge Ellis issued a Report and Recommendation, dated February 22, 2000, recommending that the motion be granted, and that the complaint be dismissed with leave to re-plead claims of employment discrimination based on disability and retaliatory discharge. On March 3, 2000, Kendricks filed timely objections to the Report and Recommendation.

Upon *de novo* review of the Report and Recommendation and due consideration of Kendrick's objections, the Court hereby accepts and adopts the Report and Recommendation in its entirety.

ORDER

Accordingly, it is

ORDERED that **[\*2]** Defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is granted, and Plaintiff's complaint is dismissed without prejudice re-pleading the claims of employment discrimination based on disability or retaliation within thirty (30) days of the date of entry of this Order.

Dated: 22 September 2000

New York, New York

SO ORDERED:

Victor Marrero, U.S.D.J.

Service: **Get by LEXSEE®**
Citation: **2000 U.S. Dist. LEXIS 13868**
View: Full
Date/Time: Tuesday, July 18, 2006 - 3:31 PM EDT

* Signal Legend:

- Warning: Negative treatment is indicated
- Questioned: Validity questioned by citing refs
- Caution: Possible negative treatment
- Positive treatment is indicated
- Citing Refs. With Analysis Available
- Citation information available

* Click on any *Shepard's* signal to *Shepardize®* that case.



About LexisNexis | Terms & Conditions
Copyright © 2006 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

Service: Get by LEXSEE®
Citation: 2000 U.S. Dist. LEXIS 2089

*2000 U.S. Dist. LEXIS 2089, *

MAVERICK KENDRICKS, Plaintiff, - against - WESTHAB, INC., Defendant.

98 Civ. 158 (VM) (RLE)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

2000 U.S. Dist. LEXIS 2089

February 22, 2000, Decided

**SUBSEQUENT HISTORY:** [*1] Adopting Order of September 22, 2000, Reported at: **2000 U.S. Dist. LEXIS 13868.**

**DISPOSITION:** Recommended that defendant's motion to dismiss for failure to state claim pursuant to Rule 12(b)(6) of Federal Rules of Civil Procedure GRANTED as to all claims. Kendricks' complaint dismissed.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Defendant former employer moved to dismiss pro se plaintiff's employment discrimination action brought under the Americans with Disabilities Act of 1990, 42 U.S.C.S. § 12112-12117, for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6).

**OVERVIEW:** Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC), alleging that his termination by defendant was wrongfully based on his disability and in retaliation for opposing defendant's discriminatory hiring practices. In his complaint, plaintiff categorized his disability as having fallen on defendant's grounds, he hit his head. He also stated that he was discriminated based on his race and gender. The court held that: (1) the race or gender discrimination claims were dismissed for failure to file EEOC charges; (2) plaintiff failed to provide any information as to how this head injury was disabling or allege that a major life activity was limited by the disability; (3) plaintiff did not provide facts to indicate that defendant was aware of his protected activity, or that a causal link existed between the it and his discharge; and (4) therefore plaintiff's claims were dismissed.

**OUTCOME:** Motion granted; plaintiff's claims were dismissed because his race or gender claims were not filed with Equal Employment Opportunity Commission; plaintiff failed to show how this head injury was disabling or limited a major life activity; plaintiff did not provide a causal link between protected activity and his discharge.

**CORE TERMS:** disability, retaliation, gender, retaliatory discharge, motion to dismiss, gender discrimination, pro se, recommends, employment discrimination, failure to state a claim, protected activity, construing, discriminatory discharge, prima facie case, leave to replead, fails to state, same manner, discriminated, undersigned, favorable, chambers, relaxed, causal, reply, naked, hit, sexual orientation, failed to provide, head injury, discriminatory

### LexisNexis(R) Headnotes ◆ Hide Headnotes

Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Failures to State Claims

Civil Procedure > Parties > Self-Representation > Pleading Standards

*HN1* While generally courts do not look outside the pleadings when reviewing a motion to

dismiss pursuant to <u>Fed. R. Civ. P. 12(b)(6)</u>, this standard is relaxed for pro se litigants. Therefore, courts may consider the allegations contained in a plaintiff's memorandum of law, where those allegations are consistent with the allegations in the complaint. <u>More Like This Headnote</u>

<u>Civil Procedure</u> > <u>Pleading & Practice</u> > <u>Defenses, Demurrers, & Objections</u> > <u>Failures to State Claims</u> 

*HN2* ⚓ A motion to dismiss under <u>Fed. R. Civ. P. 12(b)(6)</u> should be granted only if it appears beyond doubt that no relief could be granted under any set of facts that could be proved consistent with the allegations. <u>More Like This Headnote</u>

<u>Civil Procedure</u> > <u>Pretrial Judgments</u> > <u>Judgment on the Pleadings</u> 

*HN3* ⚓ In a motion for judgment on the pleadings, the well-pleaded allegations of fact by the nonmoving party must be accepted as true and construed in the light most favorable to that party. <u>More Like This Headnote</u>

<u>Civil Procedure</u> > <u>Pleading & Practice</u> > <u>Defenses, Demurrers, & Objections</u> > <u>Failures to State Claims</u> 

*HN4* ⚓ In considering a motion to dismiss under <u>Fed. R. Civ. P. 12(b)(6)</u>, a court should draw all reasonable inferences in favor of the plaintiff, and should not dismiss the complaint unless it appears that plaintiff can prove no set of facts in support of his claim that would entitle him to relief. However, a court does not have to accept as true conclusions of law or unwarranted deductions of fact. <u>More Like This Headnote</u>

<u>Civil Procedure</u> > <u>Pleading & Practice</u> > <u>Defenses, Demurrers, & Objections</u> > <u>Failures to State Claims</u> 

<u>Civil Procedure</u> > <u>Parties</u> > <u>Self-Representation</u> > <u>Pleading Standards</u>

*HN5* ⚓ Pleading requirements for pro se plaintiffs are relaxed. However, a complaint consisting of nothing more than naked assertions, and setting forth no facts upon which a court could find a violation of Civil Rights Acts, fails to state a claim under <u>Fed. R. Civ. P. 12 (b)(6)</u>. <u>More Like This Headnote</u>

<u>Labor & Employment Law</u> > <u>Discrimination</u> > <u>Disability Discrimination</u> > <u>Enforcement</u>

*HN6* ⚓ A district court has jurisdiction to hear claims brought under the Americans with Disabilities Act of 1990, <u>42 U.S.C.S. § 12112</u>-12117, that: (1) are included in an Equal Employment Opportunity Commission (EEOC) charge; or (2) are based on conduct subsequent to the EEOC charge which is "reasonably related" to that alleged in the EEOC charge. <u>More Like This Headnote</u>

<u>Labor & Employment Law</u> > <u>Discrimination</u>

<u>Labor & Employment Law</u> > <u>Discrimination</u> > <u>Retaliation</u> > <u>General Overview</u>

*HN7* ⚓ The Second Circuit has outlined three situations in which a subsequent employment discrimination claim is sufficiently related to the allegations in a previously filed charge: The first type of reasonably related claim is where the conduct complained of would fall within the scope of the Equal Employment Opportunity Commission (EEOC) investigation which can reasonably be expected to grow out of the charge of discrimination. The second type is one alleging retaliation by an employer against an employee for filing an EEOC charge. The third type is where a plaintiff alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge. <u>More Like This Headnote</u>

<u>Labor & Employment Law</u> > <u>Discrimination</u> > <u>Disability Discrimination</u> > <u>Employment Practices</u> > <u>Discharges & Failures to Hire</u>

Get a Document by Citation - 2007 U.S. Dist. LEXIS 2089    Filed 01/11/07    Page 36 of 42    Page 3 of 9

Case 7:06-cv-04047-SCR   Document 7

Labor & Employment Law > Discrimination > Gender & Sex Discrimination > Employment Practices > Discharges

Labor & Employment Law > Discrimination > Gender & Sex Discrimination > Exhaustion of Remedies

*HN8* Race and gender discrimination is a wholly different charge than disability discrimination and retaliatory discharge. More Like This Headnote

Labor & Employment Law > Discrimination > Accommodation

Labor & Employment Law > Discrimination > Disability Discrimination > Proof > Burdens of Proof > Burden Shifting

Labor & Employment Law > Discrimination > Disability Discrimination > Proof > Burdens of Proof > Employee Burdens

*HN9* To allege facts sufficient to state a claim under the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C.S. § 12112-12117, the plaintiff must allege that he is an individual with a disability within the meaning of the statute. The ADA provides that no covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regards to discharge of employees. 42 U.S.C.S. § 12112(a). A plaintiff bringing a claim of discriminatory discharge under the ADA bears the initial burden of establishing a prima facie case of discrimination. To meet this burden, a plaintiff must show that: (1) his employer is subject to the ADA; (2) he suffers from a disability within the meaning of the ADA; (3) he could perform the essential functions of his job with or without reasonable accommodation; and (4) he was fired because of his disability. More Like This Headnote

Civil Procedure > Pleading & Practice > Pleadings > Rule Application & Interpretation

*HN10* Conclusory assertions fail to state a claim absent factual allegations to support the assertion. More Like This Headnote

Labor & Employment Law > Collective Bargaining & Labor Relations > Unfair Labor Practices > Interference With Protected Activities

Labor & Employment Law > Discrimination > Disability Discrimination > Federal & State Interrelationships

Labor & Employment Law > Discrimination > Retaliation > Statutory Application > Americans With Disabilities Act

*HN11* The Americans with Disabilities Act of 1990 (ADA), 42 U.S.C.S. § 12112-12117, prohibits retaliation against any person who has asserted rights under its statutes. Under the ADA, a plaintiff in a retaliatory discharge case need not establish that he is a qualified individual with a disability, because the ADA protects any individual who has made a charge. 42 U.S.C.S. § 12203(a). A person may pursue a retaliation claim under the ADA even if his underlying claim of disability fails. In order to state a claim for retaliation under the ADA, the plaintiff must allege that: (1) he engaged in an activity protected by the statutes; (2) the employer was aware of that activity; (3) an adverse employment action occurred; and (4) a causal link exists between the protected activity and the adverse employment action. More Like This Headnote

**COUNSEL:** For Plaintiff: Maverick Kendricks, Yonkers, NY.

For Defendant: Susan Schenkel-Savitt, Winston & Strawn, New York, NY.

**JUDGES:** The Honorable Ronald L. Ellis, United States Magistrate Judge. HONORABLE VICTOR MARRERO, U.S.D.J.

**OPINIONBY:** Ronald L. Ellis

## OPINION: REPORT AND RECOMMENDATION

### To the HONORABLE VICTOR MARRERO, U.S.D.J.:

### I. INTRODUCTION

This matter was referred to the undersigned for general pretrial supervision and resolution of dispositive motion on April, 29, 1999 by the Honorable Jed S. Rakoff, prior to the case being transferred to the Honorable Victor Marrero on January 6, 2000. *Pro se* plaintiff Maverick Kendricks ("Kendricks") filed a complaint on October 31, 1997, alleging employment discrimination by defendant Westhab, Inc. ("Westhab"). On October 12, 1999, Westhab moved to dismiss Kendricks' complaint for failure to state a claim, pursuant to <u>Rule 12(b)(6) of the Federal Rules of Civil Procedure.</u> For the following reasons, the Court recommends that Westhab's **[*2]** motion be **GRANTED,** and Kendricks' complaint be dismissed, with leave to replead, with sufficient facts, a complaint of employment discrimination based on his disability and retaliatory discharge.

### II. BACKGROUND

On June 24, 1996, Kendricks filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging the following facts. n1 Kendricks began his employment with Westhab in March of 1992, rising to the position of Client Care Monitor. *See* EEOC Let. n2 Westhab terminated Kendricks' employment on January 10, 1996, and Kendricks' claimed in his EEOC charge letter that this termination was wrongfully based on his disability and in retaliation for opposing Westhab's discriminatory hiring practices. *See* **id.**

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n1 The factual allegations made by plaintiff in his submissions to the Court will be assumed true for purposes of this motion. *HN1*⚓While generally courts do not look outside the pleadings when reviewing a motion to dismiss pursuant to Rule 12(b)(6), this standard is relaxed for pro se litigants. *See* **<u>Donahue v. United States Dep't of Justice,</u>** <u>751 F. Supp. 45, 49 (S.D.N.Y. 1990).</u> Therefore, courts may consider the allegations contained in a plaintiff's memorandum of law, where those allegations are consistent with the allegations in the complaint. *See* **id.** Accordingly, the Court will take into consideration Kendricks' complaint, his charge letter to the EEOC, and affidavit in opposition to defendant's motion to dismiss in construing the factual background. **[*3]**

n2 "EEOC Let." refers to the charge of discrimination form to the EEOC completed by Kendricks, and dated June 24, 1996.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

On October 31, 1997, Kendricks filed his complaint, stating that he was suing pursuant to the Americans with Disabilities Act of 1990, <u>42 U.S.C. § 12112</u>-12117 ("ADA"). In addition to his claim of discrimination based on his disability and retaliatory discharge, Kendricks stated that he was also discriminated based on his race and gender. *See* Compl. at P 7. n3 Kendricks categorized his disability as "I fell on Westhab grounds, hit my head." *See* **id.**

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n3 "Compl." refers to Kendricks' complaint, filed October 31, 1997.

- - - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

In an Order dated January 12, 1998, Chief Judge Griesa directed Kendricks to file an amended complaint which specifically addressed what procedural steps he took regarding his claim. *See* 1/12/98 Order at 2. n4 On April 22, 1998, Chief **[\*4]** Judge Griesa dismissed Kendricks' complaint based on his failure to amend the complaint as required by the previous Order. *See* 4/22/98 Civil Judgement. n5 However, unbeknownst to the court, Kendricks had sent a Notice of Rights letter from the EEOC to the Pro Se Office on April 14, 1998. Based on the newly discovered information, Chief Judge Griesa vacated his previous Civil Judgment, and permitted Kendricks to proceed with his complaint. *See* 5/12/98 Order. n6

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n4 "1/28/98 Order" refers to the Order signed by the Honorable Thomas P. Griesa on January 28, 1998.

n5 "4/22/98 Civil Judgment" refers to the Civil Judgment signed by the Honorable Thomas P. Griesa on April 22, 1998.

n6 "5/12/98 Order" refers to the Order signed by the Honorable Thomas P. Griesa on May 12, 1998.

- - - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

## III. DISCUSSION

### A. Standard for dismissal

*HN2*A motion to dismiss under Rule 12(b)(6) should be granted only if it appears beyond doubt that "no relief could be granted under any set of facts that could **[\*5]** be proved consistent with the allegations." **H.J., Inc. v. Northwestern Bell Tel. Co.,** 492 U.S. 229, 249-50, 106 L. Ed. 2d 195, 109 S. Ct. 2893 (1989); **Hishon v. King & Spalding,** 467 U.S. 69, 73, 81 L. Ed. 2d 59, 104 S. Ct. 2229 (1984). *HN3*In a motion for judgment on the pleadings, the well-pleaded allegations of fact by the nonmoving party must be accepted as true and construed in the light most favorable to that party. *See, e.g.,* **Davidson v. Flynn,** 32 F.3d 27, 29 (2d Cir. 1994) (citing **Madonna v. United States,** 878 F.2d 62, 65 (2d Cir. 1989)); **National Ass'n of Pharm. Mfgs., Inc. v. Ayerst Labs.,** 850 F.2d 904, 909 n.2 (2d Cir. 1988) (treating motion for judgment on the pleadings as if it were a motion to dismiss).

*HN4*A court should draw all reasonable inferences in favor of the plaintiff, and should not dismiss the complaint unless it appears that plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *See* **Davis v. Monroe County Bd. of Educ.,** 526 U.S. 629, 119 S. Ct. 1661, 1676, 143 L. Ed. 2d 839 (1999) (citing **Conley v. Gibson,** 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957)); *see also* **Scheuer v. Rhodes,** 416 U.S. 232, 236, 40 L. Ed. 2d 90, 94 S. Ct. 1683 (1974); **[\*6]** **Sheppard v. Beerman,** 18 F.3d 147, 150 (2d Cir.), *cert. denied,* 513 U.S. 816, 130 L. Ed. 2d 28, 115 S. Ct. 73 (1994). However, a court does not have to accept as true "conclusions of law or unwarranted deductions of fact." **First Nationwide Bank v. Gelt Funding Corp.,** 27 F.3d 763, 771 (2d Cir. 1994), *cert. denied,* 513 U.S. 1079, 130 L. Ed. 2d 632, 115 S. Ct. 728 (1995) (quoting 2A Moore & Lucas, Moore's Federal Practice P 12.08, at 2266-69 (2d ed. 1984)).

*HN5*Pleading requirements for pro se plaintiffs are relaxed. *See* **Williams v. Vincent,** 508 F.2d 541, 543 (2d Cir. 1974); **Boddie v. Schnieder,** 105 F.3d 857, 860 (2d Cir. 1997). However, "a

complaint consisting of nothing more than naked assertions, and setting forth no facts upon which a court could find a violation of Civil Rights Acts, fails to state a claim under Rule 12(b)(6)." **Yusuf v. Vassar College**, 35 F.3d 709, 713 (2d Cir. 1994) (quoting **Martin v. N.Y. State Dep't of Mental Hygiene**, 588 F.2d 371, 372 (2d Cir. 1978)).

## B. Employment discrimination claim

*HN6*A district court has jurisdiction to hear ADA claims **[*7]** that: (1) are included in an EEOC charge; or (2) are based on conduct subsequent to the EEOC charge which is "reasonably related" to that alleged in the EEOC charge. **See Miller v. International Tel. & Tel.,** 755 F.2d 20, 26 (2d Cir. 1985). The Second Circuit in **Miller** held that the purpose of mandating notice to the EEOC "is to encourage settlement of discrimination disputes through conciliation and voluntary compliance" which "would be defeated if a complainant could litigate a claim not previously presented to and investigated by the EEOC." **See id.**

1. Discrimination Based on Race and Gender

In his complaint, Kendricks indicated three categories under which he experienced discrimination by Westhab: race, gender, and disability. n7 However, his charge letter to the EEOC indicated only two areas on which he was discriminated: disability and retaliation. Therefore, the issue before the Court is whether Kendricks' complaints of race and gender discrimination is conduct subsequent to the EEOC charge, and if so, whether it is "reasonably related" to the charge of discrimination based on disability and retaliation.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - -

n7 In his complaint, Kendricks states that his gender claim is based on his "not gay" status. **See** Compl. at P 7. The Court interprets this language as making a claim of discrimination based on his sexual orientation of heterosexual. Because the Court makes the determination that the race and gender claims are not subsequent conduct, nor are they reasonably related to his EEOC charge, the Court need not address whether sexual orientation is a basis of discrimination under the Civil Rights Act.

- - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - *HN7* **[*8]**

The Second Circuit has outlined three situations in which a claim is sufficiently related to the allegations in a charge:

> The first type of reasonably related claim we have recognized is . . . where the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination. . . . The second type . . . is one alleging retaliation by an employer against an employee for filing an EEOC charge. . . . The third type . . . is where a plaintiff alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge.

**Butts v. City of New York Dep't of Housing Preservation and Dev.,** 990 F.2d 1397, 1402-03 (2d Cir. 1993) (internal quotations and citations omitted).

Here, the submissions to the Court from Kendricks are wholly lacking in facts which would indicate that the alleged race and gender discrimination were conduct subsequent to the claim in his EEOC charge letter. In fact, his EEOC charge letter complains of being wrongfully terminated based on his disability and in retaliation. Therefore, it is illogical that any race and gender **[*9]** discrimination was conduct *after* the wrongful discharge.

Further, Kendricks' complaints of race and gender discrimination are not reasonably related to his disability and retaliation claim. While investigating the charge of discrimination and retaliatory discharge, it would not be reasonable to assume that the scope of the investigation by the EEOC would encompass race and gender. **HN8**☟Race and gender discrimination is a wholly different charge than disability discrimination and retaliatory discharge. Moreover, Kendricks gave no indication that his race and gender claims are related to his disability and retaliation claim. Therefore, it is not reasonably foreseeable that the discrimination was carried out in the same manner. To the extent that the complaint alleges discrimination on the basis of race or gender, it must be dismissed for failure to file EEOC charges.

2. Discrimination Based on Disability

**HN9**☟To allege facts sufficient to state a claim under the ADA, the plaintiff must allege that he is an individual with a disability within the meaning of the statute. **See Lyons v. Legal Aid Soc., 68 F.3d 1512, 1515 (2d Cir. 1995).** The ADA provides that "no covered **[*10]** entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regards to . . . discharge of employees. . . ." 42 U.S.C. § 12112(a). A plaintiff bringing a claim of discriminatory discharge under the ADA bears the initial burden of establishing a prima facie case of discrimination. To meet this burden, a plaintiff must show that: (1) his employer is subject to the ADA; (2) he suffers from a disability within the meaning of the ADA; (3) he could perform the essential functions of his job with or without reasonable accommodation; and (4) he was fired because of his disability. **See Ryan v. Grae & Rybicki, P.C., 135 F.3d 867, 869-70 (2d Cir. 1998).**

Construing the allegations of the complaint, and drawing all inferences in his favor, the Court finds that Kendricks failed to make a prima facie case under the ADA. In his complaint, he states his disability as: "I fell on Westhab grounds, hit my head." Compl. at P 7. While the Court construes his allegation as one of a head injury, Kendricks has failed to provide any information as to how this head injury is disabling. Furthermore, **[*11]** Kendricks does not allege that a major life activity is limited by the disability, that he has a record of a disability, or that he is regarded as having such an impairment. **See** Compl.

Even if the Court relies on Kendricks' reply to the motion to dismiss in its review of the sufficiency of his allegations, he would not survive Westhab's motion to dismiss. In his reply, Kendricks maintains that he "has a long-term physical impairment due to the fall he suffered on the defendant's property." **HN10**☟Conclusory assertions fails to state a claim absent factual allegations to support the assertion. **See, e.g., Sacay v. Research Foundation of the City Univ. of New York, 44 F. Supp. 2d 496, 501-02 (E.D.N.Y. 1999); Hassan v. Slater, 41 F. Supp. 2d 343, 350 (E.D.N.Y. 1999); Buckley v. Consolidated Edison Co. of New York, Inc., 908 F. Supp. 217, 219 (S.D.N.Y. 1995).** Because Kendricks failed to provide sufficient facts that support his bald assertion that he is disabled, the Court recommends that plaintiff's ADA claim of discrimination based on a disability be **DISMISSED.**

3. Retaliation Claim

**HN11**☟The ADA prohibits retaliation **[*12]** against any person who has asserted rights under its statutes. Under the ADA, a plaintiff in a retaliatory discharge case need not establish that he is a "qualified individual with a disability," because the ADA protects "any individual" who has made a charge. **See** 42 U.S.C. § 12203(a); **Treglia v. Town of Manlius, 68 F. Supp. 2d 153, 158 (N.D.N.Y. 1999).** A person may pursue a retaliation claim under the ADA even if his underlying claim of disability fails. **See** Treglia, 68 F. Supp. 2d at 158 (quoting **Mesnick v. General Electric Co., 950 F.2d 816, 827 (1st Cir.1991), cert. denied,** 504 U.S. 985, 119 L. Ed. 2d 586, 112 S. Ct. 2965 (1992)).

In order to state a claim for retaliation under the ADA, the plaintiff must allege that: (1) he engaged in an activity protected by the statutes; (2) the employer was aware of that activity; (3) an adverse employment action occurred; and (4) a causal link exists between the protected activity and the adverse employment action. **See Holt v. KMI-Continental, Inc., 95 F.3d 123, 130 (2d Cir. 1996).**

Here, Kendricks' complaint states that **[*13]** his discriminatory discharge occurred "for my opposing the organizations discriminatory hiring practices by Westhab. . . ." Compl. at P 8. Again construing the complaint in the light most favorable to the plaintiff, Kendricks failed to allege sufficient facts to state a claim of retaliatory discharge.

While Kendricks does state he was discharged for a protected activity, he does not provide facts to indicate that Westhab was aware of his activity, or that a causal link existed between the protected activity and the discharge. The totality of Kendricks' case is a "naked assertion" of his state of mind. Thus, even taking into account the liberal pleading requirements afforded to *pro se* litigants, plaintiff's retaliation claim should be **DISMISSED** for failure to state a claim upon which relief can be granted.

However, because *pro se* litigants should be given every opportunity to state a valid claim, the Court recommends that Kendricks be granted leave to replead the disability and retaliatory discharge claims with sufficient facts.

## IV. CONCLUSION

For the aforementioned reasons, the Court respectfully recommends that defendant's motion to dismiss for failure to state **[*14]** a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure be **GRANTED** as to all claims, with leave for plaintiff to replead his ADA claim of employment discrimination based on disability and retaliation.

Pursuant to Rule 72, Federal Rules of Civil Procedure, the parties shall have ten (10) days after being served with a copy of the recommended disposition to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies delivered to the chambers of the Honorable Jed S. Rakoff, 500 Pearl Street, Room 1340, and to the chambers of the undersigned, Room 1970. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See* **Thomas v. Arn,** 474 U.S. 140, 150, 88 L. Ed. 2d 435, 106 S. Ct. 466 (1985); **Small v. Secretary of Health and Human Services,** 892 F.2d 15, 16 (2d Cir. 1989) (**per curiam**); 28 U.S.C. § 636(b)(1) (West Supp. 1995); Fed. R. Civ. P. 72, 6(a), 6(e).

**DATED: February 22, 2000**
**New York, New  [*15]  York**

**Respectfully Submitted,**

**The Honorable Ronald L. Ellis**

**United States Magistrate Judge**

Service: Get by LEXSEE®
Citation: **2000 U.S. Dist. LEXIS 2089**
View: Full
Date/Time: Tuesday, July 18, 2006 - 3:31 PM EDT

* Signal Legend:
● - Warning: Negative treatment is indicated
▨ - Questioned: Validity questioned by citing refs
⚠ - Caution: Possible negative treatment
✦ - Positive treatment is indicated
Ⓐ - Citing Refs. With Analysis Available
Ⓘ - Citation information available
* Click on any *Shepard's* signal to *Shepardize®* that case.

Case 1:06-cv-04041-SCP Document 87    Filed 01/11/07    Page 42 of 42

 **LexisNexis®**

About LexisNexis | Terms & Conditions
Copyright © 2006 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.